FILED
MAY 23, 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

MHW

**RECEIVED**
MAY - 9 2008
5-9-2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LINAE M. NESBITT<br>Plaintiff,<br><br>v.<br><br>DRAPER & KRAMER, INC.<br>Defendants | ) <br>) <br>) CIVIL ACTION<br>) CDY<br>) 08CV2684<br>) JUDGE MORAN<br>) MAG. JUDGE DENLOW |

## COMPLAINT OF HOUSING DISCRIMINATION

1. This is an action for housing discrimination.

2. The Plaintiff is Linae M. Nesbitt of the county of Cook in the state of Illinois.

3. The Defendant is Draper & Kramer, Inc., whose registered agent's offices are located at:

   33 W MONROE ST in the City of Chicago, County of Cook, State of Illinois 60603.

   Defendant's phone number: 312-346-8600.

4. Plaintiff sought to rent an apartment at Lake Meadows Apartments, a complex owned and operated by the Defendant, located at:

   500 E. 33rd Street in the City of Chicago, County of Cook, State of Illinois 60616.

5. Plaintiff was denied housing by the Defendant.

6. **Defendant discriminated against Plaintiff on or about May _____, 2006.**

7. Other than this Complaint, Plaintiff has not filed any other charges against Defendant for their actions.

8. Defendant discriminated against Plaintiff due to Plaintiff's disability, in that she is blind and due to her source of income, in that she receives public assistance from the federal government (in the form of Section 8) to pay her rent.

9. Defendant refused to process Plaintiff's rental application and allow Plaintiff thus denied her the opportunity to reside at Defendant's apartment complex due to Plaintiff's disability and source of income. Despite the fact that the value of Defendant's rental voucher far exceeded the amount of rent for the apartment that Plaintiff was attempting to lease and that Plaintiff had other sources of income to cover any and all additional living expenses,

1

Defendant insisted that Plaintiff did not have enough income to reside in the complex. When Plaintiff asked that Defendant's pretextual income requirement be waived in light of the circumstances, including her disability, Defendant denied Plaintiff's request for a reasonable accommodation as well.

**10. The specific facts supporting Plaintiff's claim of discrimination are as follows:**

My name is LMN. I am disabled by a visual impairment—legally blind. I currently reside at 2605 South Indiana Avenue in Chicago, Illinois where my rent is $1100.00 monthly. I have been a participant of the Federal Housing Voucher Program since approximately 1998 following my blindness. The Voucher covers 2 bedrooms or $1050.00 monthly.

Pursuant to my request, several persons called and/or visited the leasing office of Lake Meadows (Residential) to obtain information regarding the availability of one bedroom apartments. According to leasing agents, Approximately 5 specific units in the price range of $1,000 were listed as available and ready. Additionally, 2 or 3 specific units in the same price range were listed as available soon because the units were being prepared.

I went into the leasing office with MG and submitted an application with the required fee to Lake Meadows (Residential) for a one bedroom apartment. The apartment was approximately $800.00. I did not directly mention my source of income only it's value. The leasing agent assisting me was pleasant and efficient at that time. She stated the application process took about 3 days to 1 month (worse case scenario). She added the average time was 1 week and that I could pick up the keys and immediately move in so long as everything checked out. I informed her time was of the essence because: 1) my current apartment complex had a new owner and was being converted to condominiums so I had to move right away; and 2) I was studying for a big upcoming exam so I did not want moving to become a distraction.

I sent a letter to supplement my application to the leasing office. The letter discussed among other things my disability, my source of income, and my status as a recent law school graduate. I requested "special" consideration of my application and if necessary a "reasonable" accommodation due to my circumstances.

I was contacted via telephone by the leasing agent who was processing my application. I was asked to come into the office and meet with the manager of the leasing office. A day or so later, along with my mother, we met with the manager. Therein, I responded to general questions about myself and my application. The manager explained concerns of Lake Meadow's due to a recent lawsuit against them by another blind person. I tearfully stated I was seeking housing and not a fight. The manager then agreed to a lease with a co-signer. I came back to the office a couple of days later with a co-signer and we completed another application with another fee.

Sometime after the co-signer and I completed the new application, I was contacted via telephone by the leasing agent and informed the apartment had been leased. I stated I would take another unit in my price range and I knew several were available. The agent seemed to be stalling and attempted to arrange appointments for viewing other apartments. I told her that I did not need to see them as I trusted the Lake Meadows standards.

Again, I was contacted via telephone by the leasing agent and asked to meet with the Vice President. I was told to bring to the meeting additional documentation of personal information, including 3 bank statements. My mother attended the meeting with me. I brought a tape recorder and explained it was to take notes. Mr. Ortiz refused to convene the meeting with the recorder on, despite my explanation regarding the Americans with Disability Act (ADA). I turned the recorder off and the meeting began. Therein, I was questioned thoroughly and callously by Mr. Ortiz for more than 1 hour. The meeting ended with Mr. Ortiz stating I would be contacted soon with a decision/answer. I confirmed my telephone numbers with him and made sure he had my new address. My current lease had expired and I was living with mom.

I called Mr. Ortiz to inquire about the apartment and decision. He informed me the matter had been turned over to the Legal department and that I would hear from them soon. I humbly told him I did not want trouble, I just really wanted the apartment and I explained why. He stated the matter was no longer in his hands and said, "it is what it is."

I called Mr. Ortiz again. He stated a determination had been made and was mailed to me. He then realized it was sent to my old address and apologized. He would not tell me the decision over the phone, even though I reminded him I was blind and that someone else would read/see it before me anyway. I went to my old apartment and the leasing office gave me some mail which included a letter from Lake Meadows. In a nutshell, Lake Meadows refused to rent to me. I called Mr. Ortiz back and asked him to reconsider. He returned my call and stated the decision was firm. I wrote one last letter to Lake Meadows/Mr. Ortiz on Memorial day (see exhibit A) recapping the aforementioned events and expressing my distress and damages.

11. Plaintiff demands that this case be tried by a jury.

12. THEREFORE, Plaintiff prays that this Honorable Court grant the following relief to the Plaintiff:

   a. Find that the Defendant discriminated against the Plaintiff due to Plaintiff's Disability.
   b. Find that the Defendant discriminated against the Plaintiff due to Plaintiff's Source of Income.
   c. Find that the Defendant failed to reasonably accommodate Plaintiff due to Plaintiff's Disabilities.
   d. Grant the Plaintiff appropriate injunctive relief, compensatory damages, punitive damages, prejudgment interest, post-judgment interest, and costs, including reasonable attorney fees and expert witness fees.
   e. Grant such other relief as this Honorable Court may deem appropriate.

Plaintiff's Signature: _____

Plaintiff's Name: _____

Plaintiff's Address:     2605 S. Indiana Ave.

                        Chicago, IL 60616

Plaintiff's Phone Number:    312-808-1206

Exhibit A 1 of 4

**Linae M. Nesbitt**   606 Woodland Park, Apt. 206, Chicago, IL  60616
**(312) 808-1206**

### MEMO

Date: Memorial Day 2006
To: Draper & Kramer/ Lake Meadows Management Office (Residential)
Attn: Victor Ortez
From: Linae M. Nesbitt
CC: The John Marshall Law School Fair Housing Legal Clinic, Lawyers Committee for Better Housing,Access Living, Department of Housing and Urban Development,and Illinois Human Rights Commission.

RE: Reply to Denial of Application for housing

The purpose of this writing is to address the: (1) damages to me caused by your discriminatory conduct in processing my application for an apartment; (2) misrepresentations used to justify the denial contained in your letter dated May 5, 2006;and 3( the *reasonableness* of the accommodations I requested.

   First, the financial damage I have incurred amounts to approximately $1,945.00. However, the emotional distress I have suffered is exorbant. The harm I have sustained is a direct result of your breach in the duty to treat me fairly. Approximately a week after submitting an application for housing, I submitted a memo dated March 29, 2006. This memo clearly notifies you *"time is of the essence."* Moreover, I repeatedly VERBALLY emphasized this point throughout this entire ordeal.

   According to your own leasing office the standard processing time for applications range from two days to three weeks. In fact, Regina the leasing agent called me twice to "get things moving along"since I was pressed for time. The calls occurred after I submitted my application, but prior to my memo which first mentioned the Housing Voucher program. Thus,I was surprised yet still hopeful when after anxiously waiting for more than a month I was called infor a meeting with Kathleen the General Manager and then with you the Vice President. Again, during these meetings I explained the urgency of my circumstances, reiterated the essence of time,  and humbly requested a sppedy answer regarding the apartment I so desired.

   Additionally, in each of these meetings I expressed a great concern about discrimination against me. Also during each of these meetings, I shared the potential for financial hardship  and the tremendous stress and pressure caused by the delay in responding to me. Specifically, I mentioned again and again that I did not  want and surely could not afford to put my things in storage and move two times. Furthermore, I shared how all the discussions about how I became eligible for Social Security and the Housing Voucher Program was immensely painful

1

Linae M. Nesbitt                      606 Woodland Park, Apt. 206, Chicago, IL  60616
(312) 808-1206

---

emotionally. In fact, I struggled unsuccessfully to not shed tears in the meeting with Kathleen while describing the unfortunate series of events in my life after being stricken by blindness.

       To date, I have not found an apartment comparable in any aspect (price, location, balcony, etc.)to the one I applied for at Lake Meadows. Moreover, I am dealing with the very problems I tried so desperately to avoid. My belongings are either in storage or scattered about at the home of family and friends. Eventually when I do find an appropriate unit, I will be moving for the second time. Currently I am residing with relatives. However, there is no place like your own home! The independence I worked so hard to achieve is almost gone. It hurts to even think about how Lake Meadows has mistreated me. I was simply seeking to fulfill a basic need common to all, shelter. None of this should ever have happened. Especially, since from the very beginning I pleaded with the agents of your company to just be fair to me and give me a timely answer

       Second, there are several misrepresentations in your letter to me denying my application. I believe some of these false statements were made intentionally
to stop me from acquiring the unit. The misrepresentations were relied upon to reject my application. Whether intentional or negligent, such errors were avoidable. You may recall I brought a mini tape recorder to our meeting so I could take accurate notes. I even graciously offered to send You a copy of the minutes. You may further recall demanding me to identify "that device," and then refusing to convene the meeting until it was powered off. Although I gently attempted to inform you of both my inability to take notes any other way, and this alternative medium of taking notes is a right granted to me by the Americans With Disabilities Act(A.D.A.) you remained unconciliatory. So, in order to calm you and get on with the meeting I acquiesced.

Albeit perhaps indirectly,your action of denying my right to take notes in a manner suitable for my impairment led to the following misrepresentations contained in your letter dated May 4, 2006. One, you falsely stated that some time earlier than the date of your writing I was given an answer verbally. In fact, I first learned of your decision when I received the letter. Two, you incorrectly stated the Chicago Housing Authority Council(C.H.A.C.) does not allow Co-signers. In fact, CHAC was very much aware I had a Co-signer for my last apartment. Three, you erroneously stated I have sixty nine thousand dollars worth of student loans. In fact, I have less than fifty thousand dollars in such loans. Four, you mistakenly stated I was interested in apartment number 611. In fact, I was pursuing apartment number 311.

It appears you deliberately made the first three aforementioned misrepresentations. Moreover, you unjustifiably relied on the misrepresentations to exonerate your improper actions toward me. This conduct qualifies as intentional.
It is possible the fourth misrepresentation resulted from negligence. Nevertheless, all of the misrepresentations could have been prevented.

2

Exhibit A 3 of 4

Linae M. Nesbitt                               606 Woodland Park, Apt. 206, Chicago, IL  60616
(312) 808-1206

---

      Finally, I believe both of the accommodations I requested were extremely reasonable. Regarding a Co-signer, I have already above discussed this issue.
It is purely nonsense that CHAC has a policy against third party guarantors. Upon inquiring I was informed CHAC niether condones nor forbids
      Co-signers. Specifically, I was told a Co-signer amounts to an agreement between the landlord and another party for the benefit of a CHAC client. In essence, CHAC has no involvement in this additional contract.

      Next, it seems my request for a waiver of the minimum income standard was improperly considered because there was no evaluation of reasonableness. In your letter you acknowledge the legal requirement for reasonable accommodations in or to rules, policies, and practices.  Therefore you must be aware it is critical to first make a determination as to whether the acommodation requested is reasonable. Furthermore, your letter pointed out the legal requirement to accept my Housing Voucher as a "source" of income. Also, in the letter you make the point there is no such requirement to accept the source of the income (the Housing Voucher) itself as sufficient. However, silence does not indicate prohibition. It does not make sense that you cannot grant a provision because there is no stated legal requirement for such. Moreover, your letter never confronts the real issue as is required-- the "reasonableness" of the request. I believe my request for a waiver was inordinately reasonable. By your own admission the value of the voucher exceeded the market rent of the unit by approximately $200.00.
      Hence, the rent required for the apartment was virtually a surety. To that end, application of the rent to income standard in my case was unjust.

      Additionally, you explain a particular finding wherein an income standard was not illegal WHEN IT WAS applied equally to all applicants. However, there is a rebuttable presumption the income standard is not a pretext for discrimination. You go on to explain how the law just requires the disabled to be treated equally and not preferentially. However, you should be cognizant that for people with disabilities, equal treatment as an "end" result is often accomplished through the "means" of unequal treatment. Simply put, sometimes you must treat the disabled  unequally in order for them to enjoy equal experiences(opportunities.) One instance is the provision of additional time on assignments for the blind. Another instance is the provision and reservation of parking spaces which are nearer than others for persons with mobility impairments.

      In closing, I must comment on the faultiness of the final premise and conclusion in your letter. You state in part, it is not my disability but my economic status which prevents me from enjoying the opportunity to reside at Lake Meadows. On the contrary, it is your unreasonable

3

**Linae M. Nesbitt**          606 Woodland Park, Apt. 206, Chicago, IL  60616
**(312) 808-1206**

and thereby inconsiderate policy that prevented me from enjoying an ideal apartment. The accommodations I requested were both reasonable and within your power to grant. It should also be noted, your tone in the letter is consistent with the nastiness you displayed throughout our interactions. Moreover, by your conduct in toto you have demonstrated the poor attitude and preconceived notions you hold regarding people with lower incomes. Based on the foregoing, I believe you discriminated against me in denying the reasonable accommodations I so humbly requested. Further, I believe either taken altogether or in some combination my race, disability, and source of income were the basis for your discrimination against me.
    Moreover, I am compelled to believe your minimum standards are a pretext for discrimination.

I make no apology for my race, my disability, my housing subsidy, or any service/program which has enriched the quality of my life. In fact, I will be forever grateful to my country that I have maintained a standard of living which is substantially similar to my lifestyle prior to blindness. It is quite disheartening to realize that despite the magnanimous strides of progress made in this society, an individual is still not judged on the content of character. In effect, the policy of "rent to income" is a barrier to fair housing for all. I am hopeful though, my situation will serve as a conduit for changing this unfair housing practice; which has an intentional disparate impact on persons with housing Vouchers. May God continue to Bless America!


Yours Truly,



Linae M. Nesbitt

Date

4